EXHIBIT 2

**bunker partner**
global · professional · committed

1. **Definitions**

    "Seller" means "BUNKER PARTNER" company as it is stated in the Confirmation Notice, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable.

    "Buyer" means the party and/or parties contracting to buy and/or take delivery of Products and/or Services, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable and further including the Vessel, her Master, her Chief Engineer, her Owners and their servants, representatives, agents, brokers and managers.

    "Products" means Seller's commercial grades as currently offered by Seller for similar use at the time and place of delivery, including but not limited to Fuels and Lubricants.

    "Fuels" means any petroleum-based product currently offered, delivered and/or to be delivered by the Seller.

    "Services" means agency services or similar attendance to Buyer's needs.

    "Contract" means an agreement between Seller and Buyer, that consists of and includes these Conditions, Confirmation Notice and any/all other additional terms and conditions the Seller and Buyer may have expressly agreed upon.

    "Confirmation Notice" and/or "Confirmation" means a document and/or email sent by the Seller to the Buyer stipulating terms and conditions of particular Products' delivery(-ies) and/or Services' provision and constituting an integral part of all/any Contract(s) made by the Seller for the Products', Services' delivery/provision. Provisions stated in the Confirmation Notice prevails and overrides any/all other terms, negotiations, preliminarily agreements and etc of whatever nature, including and not limited to those stated in the Buyer's Nomination.

    "Vessel" the vessel nominated by Buyer to which the Products and/or Services to be delivered/provided.

    "Conditions" means present Seller's General Terms and Conditions applicable to all/any Products' delivery(-ies) and/or Services' provision and constituting an integral part of all/any Contract(s) made by the Seller for the Products', Services' delivery/provision.

    "Lubricants" means any lubricant product currently offered, delivered and/or to be delivered by the Seller.

    "Day" means a calendar day, unless otherwise is explicitly stated.

2. **Validity and Scope of Terms**

    2.1 These Conditions constitute an integral part of any offer and/or Contract made for Products or Services provision by Seller to Buyer.

    2.2 The supply by Seller of Products or Services and every quotation, pro-forma invoice, invoice, confirmation notice, order confirmation price list or all/any other similar documents is made or issued solely subject to these Conditions and no representation or warranty, collateral or otherwise shall bind Seller and no statement made by any representative by or on behalf of Seller shall vary these conditions unless such representation, warranty or statement shall be made in writing and signed by an officer of Seller and shall be stated to be made specifically in pursuance of this clause 2.2.

    2.3 Any variations to these Conditions shall not prejudice or limit in any way the validity of the remaining Conditions of any Contract between Seller and Buyer. Failure by either party at any time to enforce any of these Conditions shall not be considered as a waiver by such party of such provisions or in any way affect the validity of these Conditions. If any provision of the Contract is invalid, void, or unenforceable, it will not affect the validity, legality, or enforceability of any other provision of the Contract.

    2.4 These Conditions embody all the terms and conditions and supersede and cancel in all respects any

previous Conditions, agreements and/ or undertakings, whether given in writing or orally.

2.5  No statements made outside the Contract, or in any brochures, catalogues or sales literature, as well as in any correspondence or orally during negotiations, are intended to have any contractual effect.

2.6 Seller reserves the right to include, at its discretion, any additional or substitute terms and conditions. Any additional or substitute terms shall be advised to Buyer prior to the time of concluding the Contract.

3. **Terms of Offers and Contracts**

3.1 Seller's offers and estimates of costs are to be understood as being conditional and subject to availability and alteration and shall include only such services as are expressly specified.

3.2 The Contract is deemed as concluded when Seller provides the Buyer with Confirmation Notice. This same provision shall also apply with regard to any subsequent additions and alterations to the Contract.

3.3 Save where otherwise expressly provided for in the Contract specifications, all particulars notified to Buyer (including but not limited to the analytical data) and all documents to which access has been given shall be deemed to contain only those approximate values customary in the trade, and do not constitute undertakings. Seller reserves the right to make alterations to such particulars or documents or the goods. The same provision shall apply to changes in the quality of goods, in so far as these do not involve material alterations. For this purpose it is not a material alteration if the altered quality will not affect generally so regarded in the trade as not affecting its ordinary and customary use.

3.4 Referenced to commercial terms, if any, shall have the meaning contained in the most recent edition of Incoterms.

3.5 In the case of imported goods the Contract shall be deemed to be concluded subject to the provision that Seller is granted any export or import licenses which may be necessary. Without prejudice to clause 4.1 below, Buyer shall indemnify Seller for any such expenses incurred in connection with the securing or delay in securing of the aforementioned licenses.

3.6 Seller is entitled to recover from Buyer all direct costs and expenses incurred as a consequence of cancellation by Buyer, for whatever reason and in any case is entitled to a liquidated damages fee of 5% of the agreed Products' Price.

4. **Prices**

4.1 Unless otherwise specified by the parties, prices are agreed in US dollars, ex-wharf, and shall represent only the purchase price of the Products. Buyer shall pay any additional expenses or costs such as barging, overtime, demurrage, wharfage, dockage, part/harbor fees, dues, duties, taxes (including but not limited to the VAT applicable under any rules and regulations and whether payable by Seller or by Buyer as per such rules and regulations), levies, fines, charges and other costs, including those imposed by governments and local authorities. If the price is quoted as "Delivered", the price includes transportation to Buyer's Vessel, but does not include demurrage or any other expenses or costs as indicated above.

4.2  Seller's Confirmation Notice to Buyer includes the estimated time of Vessel's arrival (ETA) as advised by Buyer to Seller at the time of nomination. Unless the ETA date range agreed under the Contract is wider than four days, Buyer's Vessel shall begin to take delivery of the Products within the 4-days range, i.e. three calendar days after the earliest estimated ETA. The Contract price shall be valid only for deliveries begun within such period.

4.3  If, after Seller's Confirmation Notice Buyer begins to take delivery, or requests delivery to begin outside the 4-days range referred to in clause 4.2 above, Seller is entitled to amend its quoted price under the Contract. This entitlement is without prejudice to any claim Seller may have against Buyer for failing to take delivery within the 4-days range referred to in clause 4.2 above.

### 5. Quality & Samples

5.1 Unless otherwise specified in the Contract, Products shall be of the quality generally offered by Seller to its customers at the time and place of the delivery. ANY IMPLIED CONDITIONS AND WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED AND DISCLAIMED. Buyer, having greater knowledge than Seller of his own requirements, shall have the sole responsibility for the prior selection of the particular grade(s) and acceptance thereof.

5.2 Product delivered shall be segregated from any product(s) already on board the receiving Vessel. Any consequences arising from commingling Products aboard the Vessel remain solely at the Buyer's and/or receiving Vessel's responsibility.

5.3 In order to determine the quality of the Product delivered, Seller shall be entitled to draw or cause to be drawn, at least 4 samples of each Product delivered, taken from a point and in a manner chosen by Seller or its representative, and to have them sealed, signed and stamped by the Vessel. Samples' seals numbers to be clearly stated in the bunker delivery note. If the samples and/or the bunker delivery note are signed not by the Vessel's Master it is deemed as signed on behalf of the Master of the Vessel. At least one of the samples to be handed to the Master of the Vessel which has received the delivery. Any remaining samples to be retained by Seller.

5.4 Unless otherwise agreed in writing by Seller, only samples provided by Seller to Buyer at the time of delivery, which numbers are clearly stated in the bunker delivery note shall be deemed representative of the Product delivered.

### 6. Quantity

6.1 All quantities referred to in the Contract are understood to be approximate with a margin of 10 per cent more or less at Seller's option.

6.2 Except where government regulations or local authorities determine otherwise, the quantity of Products shall be determined from the official gauge/sounding of the delivering barge, road wagon, or rail tank car, delivery note for drum deliveries, or by gauging in Seller's shore tank or by Seller's oil meter, at Seller's election. Adjustment in volume owing to difference in temperature shall be made in accordance with API/ASTM+IP petroleum measurement standards for generalized Products (table 6B, 24B, or 54B depending on port location). Buyer may be present or represented by a properly accredited agent when such measurements are taken. If Buyer is not present or represented, then Seller's determination of quantities shall be conclusive.

### 7. Deliveries and Risk

7.1 Vessel shall be supplied as promptly as circumstances permit. Any supply date within the Contract is not guaranteed, and time shall not be of the essence in respect thereof. Seller shall not be liable for demurrage or for any losses due to congestion at Seller's storage or delivery facilities or due to any prior commitment of available transportation.

7.2 If Seller should at any time, for any reason, believe there may be such a shortage of Products at any port that it may be unable to meet the demands of all its Buyers, Seller may allocate its available and anticipated supply among its Buyers in such a manner as it may in its sole discretion determine.

7.3 If Buyer causes delays to Seller's delivery facilities in the receiving of Products, Buyer shall be liable to reimburse Seller for any and all costs incurred at the minimum rate of 0,05% of the agreed Product(s) cost per day of delay on a hourly pro-rat basis or any higher amount if Seller's loss and costs exceeds such minimum delay reimbursement rate.

7.4 Seller shall not be required to deliver Products into any Vessel's tanks which are not normally used for such Products.

7.5  If any government or local port license or permit is required for deliveries hereunder, each party must comply as applicable. In case of Buyer's failure to comply, Seller shall not be required to deliver, and will be entitled to recover all costs and consequences related thereto from Buyer.

7.6  Delivery shall be made either from a shore terminal or by barge or by any other accredited methods of delivery, where such deliveries are available from time to time. In case of more than one method of delivery being available, Seller shall at its sole discretion select one, providing that it does not breach any other conditions of the Contract.

7.7  Buyer shall provide free of cost a clear safe berth, position or anchorage alongside the vessel receiving lines. Seller shall be under no obligation to make deliveries when in its sole opinion a clear and safe berth, position or anchorage is not available. Buyer shall indemnify Seller against all claims and expenses for any loss, damage, demurrage or delay caused to Seller's delivery equipment, irrespective of whether the circumstance causing the loss, damage, demurrage or delay was within the control of Buyer or his local representative.

7.8  Buyer shall make all connections and disconnections between pipelines or delivery hoses and Vessel's intake lines and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly all deliveries hereunder.

7.9  Delivery shall be completed and risk transferred as the Product passes the flange connecting the pipelines or delivery hoses with the intake lines of the Vessel at which point Seller's responsibility shall cease. Products supplied by other methods shall be considered to be delivered when passing the Vessel's rail. Buyer shall assume all risks including but not limited to loss, damage, deterioration, depreciation, evaporation, shrinkage as to the Products so delivered.

7.10  Upon completion of the delivery to the Vessel, the Master, or other authorized representative of Buyer shall confirm the delivery by signing a bunker delivery note, provided by Seller or his contractor at that time. Seller shall not be deemed to have any constructive knowledge of the authority or lack of authority of any purported local representative of Buyer and shall be under no duty to verify authority of such purported representative. The acceptance of the aforesaid signed bunker delivery note in good faith by Seller shall bind Buyer.

7.11  If Buyer fails to take delivery of the product or any part thereof within a reasonable time from the agreed supply time, Seller shall be entitled at Buyer's risk and expense, either to transport the Product back to storage or to sell in a downgraded form at a market price without prejudice to Seller's other rights under this Contract for damages and losses to be fully covered by Buyer. Seller shall at its sole discretion determine what constitutes a reasonable time to terminate the delivery.

7.12  Delivery shall be made during normal working hours. Unless otherwise agreed deliveries outside normal working hours shall be subject to additional costs which shall be borne by Buyer.

7.13  Products and Services delivered under a Contract shall be made to the account of Buyer, including but not limited to on the account of the receiving Vessel and her Owners. Buyer warrants that Seller has the right to assert and enforce a lien against the receiving Vessel for the amount of the Products and Services provided, plus without limitation, any %%, losses and costs, including related to enforcement of the lien.

## 8. Claims

8.1  Any claims made by Buyer regarding shortages in quantity must be made in writing to Seller at the time and place of delivery. Seller has the option to leave delivery equipment connected to the vessel at Buyer's expense until a quantity dispute has been resolved to Seller's satisfaction.

8.2  Any claims made by Buyer with regard to quality must be made in writing to Seller immediately upon detection of the alleged defect, and in any event no later than within 14 (fourteen) calendar days from the Product's delivery. Such claim notice must contain all details necessary to allow evaluation of the claim.

8.3 Should Buyer fail to comply with any/all of the foregoing conditions and notices requirements, Buyer is deemed to have conclusively waved all/any rights to claim and/or arbitrate and/or litigate under this Contract.

8.4 In the event of a quality claim, parties shall agree upon and undertake an analysis of one of the physical supplier's samples, retained and handled as per Cl5 hereof, with the mutually agreed independent reputable laboratory. Such analysis to be performed only with regards to the quality parameters in dispute.

8.5 If, after 21 days from the date when Seller received the quality claim notice, no agreement has been reached on a laboratory and/or particular quality parameter and/or a sample number, Seller reserves the right to have one of its retained samples independently analyzed and the results of the analysis so undertaken to be binding upon both parties. The cost of any analysis shall be borne by Buyer, unless the complaint as to the quality is shown to be justified.

9. **Payment**

9.1 Payment shall be made by Buyer in full, as directed by Seller, within the time specified in the Contract. Seller shall be entitled absolutely to the payment in full without any discount, reduction or set off (whether legal or equitable) which shall be made to Seller's bank account. Should the due date for payment fall on Saturday, Sunday or public Holiday, then payment should be received at the Seller's account on a previous working day.

9.2 When paying, Buyer shall not be entitled without Seller's consent in writing, to offset any amounts for claims against Seller, whether or not these claims are related to the Products in payment reference, and whether or not they arise out of the Contract.

9.3 Unless otherwise agreed, payment shall be made by irrevocable bank transfer. Delivery documents shall be provided to Buyer, wherever possible, however payment shall not be conditional upon receipt of such documents, unless specifically agreed at the time of concluding the Contract.

9.4 Overdue payments shall be subject to an interest charge of 0,1 % per one (1) calendar day period compounded, or the maximum rate permitted under applicable law, running from the due day of payment.

9.5 Should Products and/or Services be ordered by a broker or agent than such broker or agent as well as Buyer shall be bound and be liable for all obligations as fully and as completely as if it were itself a Buyer whether such principal be disclosed or undisclosed and whether or not such broker or agent purports to contract as brokers or agents only, but in all such cases the said broker or agent shall not have any rights against Seller.

9.6 If Buyer is in default of the full payment, or if it's financial condition, in Sellers sole opinion becomes impaired or if proceedings in bankruptcy or insolvency are instituted by and or against Buyer or in the case of liquidation or dissolution of Buyer, or any other reason at Seller's sole discretion, any and all postponed or deferred payments including interest thereon, shall become immediately due and payable and Seller reserves the right to off set the same against any debts due to Buyer or its holding or its subsidiary companies, affiliates, associated or related companies. Exercise of any such rights shall be without prejudice to Seller's rights to recover damages or losses sustained and resulting from any default by Buyer, and Seller shall have the right to suspend/and to cancel deliveries hereunder.

9.7 Any/all payments received by the Seller from or on behalf of the Buyer, notwithstanding anything specifically stated in bank payment order, shall be credited against existing balance in the following order:
a) taxes, fines, expenses, fees, charges and etc. (including court costs and attorneys' fees) accrued with regards to the Products supplied to the Buyer and/or their nominated Vessel;
b) default interests as per Cl. 9.4 or as may be otherwise agreed by the parties, accrued with regards to the Products supplied to the Buyer and/or their nominated Vessel;
c) principal invoice(s) amount(s) starting from the oldest and proceeding chronologically thereafter to the most recent.

9.8 Notwithstanding anything hereinabove, the Seller is entitled to credit the funds received from the

Buyer for any balance, invoice he considers appropriate, due or not due, overdue or not overdue, at his sole discretion which shall be conclusive upon the Buyer.

## 10. Notices

10.1  Buyer shall give Seller directly, or through Buyer's agent at least 72 hours notice (Saturday, Sunday and local Holidays excluded) of Vessel's readiness to receive delivery and exact quantity required to enable Seller to make necessary arrangements for the delivery.

10.2  Buyer shall give Seller final notice or requirement directly or through Buyer's agent at least 48 hours (Saturday, Sunday and local Holidays excluded) prior anticipated Product delivery.

10.3  Any documents' exchange and/or notices given by either party under the Contract shall be deemed as given properly and received by another party if sent from/to the emails commonly used by such party.

## 11. Health, Safety and Environment

11.1  It shall be the sole responsibility of Buyer to comply, and advise its personnel, agents and/or customers to comply, both during and after delivery, with all health and safety requirements applicable to the Products supplied. Seller accepts no responsibility for any consequences arising from failure to comply with such health and safety requirements. Buyer acknowledges familiarity with the hazards inherent in the nature of any Products, and shall protect, indemnify and hold Seller harmless against any claims and liability incurred as a result of Buyer, or any user of the Products, or its customers failing to comply with the relevant health and safety requirements.

11.2  In the event of any leakage, spillage overflow of bunker's causing or likely to cause pollution occurring at any stage, Buyer shall, regardless as to whether Buyer or Seller is responsible, immediately take such action as are necessary to affect clean up and failing prompt action, Buyer (who hereby warrant that they have been authorized by the Vessels owners) authorizes Seller to take whatever measures Seller deems fit to affect clean-up at Buyer's expense. Buyer shall indemnify and hold Seller and/or Supplier harmless against any claim or liability arising out of any leakage, spillage or overflow unless such leakage, spillage or overflow is proven to be wholly caused by Seller's fault.

11.3  Buyer warrants that the Vessel at all material time is in compliance with all national and international regulations. It shall be the responsibility of the Master of the Vessel to notify Seller of any special condition, difficulties, peculiarities, deficiencies or defects with respect to the Vessel or any part thereof, which might adversely affect the delivery of Products. Seller has the right to refuse to deliver the product to the Vessel if it's deemed probable in Sellers sole discretion that such delivery will result in adverse consequences of any kind whatsoever.

## 12. Assignments

12.1  Seller may assign/transfer any/all of its right and obligation under the Contract. Buyer shall not assign/transfer any/all of its right under the Contract, without written consent of the Seller.

## 13. Indemnity

13.1  Buyer shall defend, indemnify and hold Seller harmless with respect to any and all liability, loss, claims, expenses, or damage Seller may suffer or incur by reason of, or in any way connected with, the fault or default or negligence of Buyer or its agents in the purchase of, receipt, use, storage handling or transportation of the Products in connection with each delivery.

## 14. Liability and Damages

14.1. Seller and/or its supplier shall not be liable for special, indirect, consequential, punitive or exemplary damage of any kind arising out of, or in connection with, the performance or non performance under the Contract.

14.2. Seller's liability under, out of and/or in connection with the Contract and so as if arisen in tort shall be at all times limited by the Price of the Products supplied and/or the Services provided to the Buyer that is directly related to the damages, losses claimed to the Seller, but in any case shall not exceed 200,000.-US$ (two hundred thousand US dollars).

## 15. Sanctions Compliance

15.1 In this Contract the following provisions shall apply where any sanction, prohibition or restriction is imposed on any specified persons, entities or bodies including the designation of any specified vessels or fleets under United Nations Resolutions or trade economic sanctions, laws or regulations of the European Union or the United States of America.

15.2 The Buyer and the Seller each warrant that at the date of entering into this Contract and continuing until delivery of the Products and payment by the Buyer to the Seller in full:

a) neither Party is subject to any of the sanctions, prohibitions, restrictions or designation referred to in Sub-clause 15.1 which prohibit or render unlawful any performance under this Contract;
b) the Seller is selling and the Buyer are purchasing the Products as principals and not as an agent, trustee or nominee of any person with whom transactions are prohibited or restricted under Sub-clause 15.1;

c) the Buyer further warrant that the Vessel is not a designated vessel and is not and will not be chartered to any entity or transport any cargo contrary to the restrictions or prohibitions in Sub-clause 15.1 above; and

d) the Seller further warrants that the Products are not of an origin or have been exported as a product from a place that is subject to any of the sanctions, prohibitions, restrictions or designation referred to in Sub-clause 15.1 above.

15.3 If at any time during the performance of this Contract either Party has reasonable grounds to believe that the other Party is in breach of warranty as aforesaid, the Party not in breach shall comply with the laws and regulations of any government to which that Party or the Vessel is subject and follow any orders or directions which may be given by any regulatory or administrative body, acting with powers to compel compliance. In the absence of any such orders, directions, laws or regulations, the Party not in breach may terminate this Contract forthwith.

15.4 Without prejudice to the generality of the foregoing, Seller reserves the right at all times, whether prior to or after confirmation of nomination of a Vessel, to decline to supply Products to such Vessel if Seller reasonably considers that such supply could cause Seller to be in violation of, or exposed to, punitive measures under any sanctions, prohibitions, restrictions or designation.

15.5 Notwithstanding anything to the contrary in this Clause, Buyer and Seller shall not be required to do anything which constitutes a violation of the laws and regulation of any State to which either of them is subject.

15.6 The Buyer and the Seller shall be liable to indemnify the other Party against any and all claims, including return of any payment, losses, damage, costs and fines whatsoever suffered by the other Party resulting from any breach of warranty as aforesaid and in accordance with this Contract.

### 16. Anti-bribery & Corruption

16.1  The Seller and Buyer warrant and undertake that in connection with the sale and purchase of Marine Fuels under this Contract they will each respectively comply with all applicable laws, regulations, rules, decrees and/or official government orders and requirements of the United States, the United Kingdom, Denmark, and any other relevant jurisdiction relating to anti-money laundering and anti-bribery.

### 17. Force Majeure

17.1  Neither Buyer nor Seller shall be responsible for damages caused by delays, failure to perform in whole or in part any obligation hereunder (other than the payment of Price), or non-compliance with any of the terms hereof when such delay, failure or non-compliance is due to or results from causes beyond the reasonable control of the affected party, including without limitation acts of God, fires, flood, adverse weather, perils of the sea, war (declared or undeclared), embargoes, accidents, strikes, labor disputes, failure of, or shortage of vessels, or barge services normally available to Seller, breakdown of or damage to, or shortage in facilities used for production, refining of transportation of Products, acts in compliance with requests of any Government authorities or person purporting to act on behalf thereof, or any other similar causes.

17.2  Notwithstanding the provisions of this clause, the Buyer shall not be relieved of any obligation to make payments for all sums due hereunder.

17.3  In case the Force Majeure and/or other circumstances as stated in Cl.17.1 hereof prejudice delivery within the dates initially agreed between the Parties, the Seller is entitled (i) to cancel the Product's delivery or (ii) change the Product price, taking into account market fluctuations.

### 18. Confidentiality

18.1  Neither Party shall disclose to third parties any Confidential Information learned during pre-contractual discussions except with the prior written consent of the other Party, or to the extent required by law or regulation or by request of a government or agency thereof, or to the extent the disclosure is made in connection with an arbitration between the Parties or an action to enforce or vacate an arbitration award.

18.2  The Parties shall take reasonable precautions to ensure that no unauthorised disclosure of Confidential Information takes place.

18.3  If a Party is uncertain to whether information is confidential, that Party shall consult with the other Party.

18.4  Should either Party be required by law to disclose Confidential Information, the disclosing Party will notify the other party and shall disclose only the minimum Confidential Information required to satisfy legal requirements.

18.5  Information is not confidential for the purposes of this Clause if it was in the possession of the Party prior to receipt from the other Party; becomes public available other than as a result of a breach of this Contract by one of the Parties; or is lawfully received from a third party.

18.6  This Clause shall survive termination of this Contract.

### 19. Breach

19.1  Seller may terminate the Contract in whole or in part, at its own discretion upon the breach of any provision hereof by Buyer.

19.2  Seller reserves the right to recover from Buyer all damages and costs (including but not limited to loss of profit) resulting from any breach of the Contract.

## 20. Title

20.1 The Products shall remain the Seller's property until Buyer has paid for them in full. Until that time, Buyer shall hold them, store them in such a way that they can be identified as Seller's property, and keep them separate from Buyer own property and the property of any other person. Although the Products remain the Seller's property until paid for, they shall be at Buyer's risks from the time of delivery and Buyer shall insure them against loss or damage accordingly and in the event of such loss or damage it shall hold the proceeds of such insurance on behalf of Seller as trustee of Seller.

20.2 Buyer's rights to possession of the Products shall cease if:
a) Buyer has not paid for the Products in full by the expiry of any credit period allowed by the Contract; or

b) Buyer is declared bankrupt or made any proposal to his creditors for a reorganization or other voluntary arrangement; or

c) A receiver, liquidator or administrator is appointed in respect of Buyer's business.

20.3 Upon cessation of Buyer's right to possession of the Products in accordance with clause 20.2, the Buyer shall at his own expense make the Products available to the Seller and allow Seller to repossess them.

20.4 Buyer hereby grants Seller, his agents and employers an irrevocable license to enter any premises where the products are stored in order to repossess them at any time.

20.5. If the Products are not separately stored and/or if they are used Seller is entitled to take a possession over the same quantity of the same products as the Products supplied or the other quantity of other products actually onboard the Vessel that correlates to the amounts due by Buyer to Seller for Products delivered and not fully paid.

## 21. Governing Law & Jurisdiction

21.1 This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 200,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

In cases where the claim or any counterclaim exceeds the sum agreed for the LMAA Intermediate Claims Procedure and neither the claim nor any counterclaim exceeds the sum of US$400,000.00 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Intermediate Claims Procedure current at the time when the arbitration proceedings are commenced. Where the reference is to three arbitrators the procedure for making appointments shall be in accordance

with the procedure for full arbitration stated above.

21.2. Notwithstanding provisions of Cl. 21.1. hereof all/any questions, natters with regards to the maritime lien over the Vessel for the Products supplied shall be governed and exist in accordance with the Maritime Law of the USA.

21.3. However, nothing in this clause precludes Seller from taking any such action as it shall in its sole discretion consider necessary to enforce, safeguard or secure its rights under the Contract in any court or tribunal in any state or country.

22. **COVID-19**

22.1. If a party ("covid-19 affected party") is prevented, hindered or delayed from performing in whole or in part any obligation of this contract by reason of the effects of covid-19 whether foreseeable or unforeseeable ("covid-19 event"), it shall give written notice to the other party promptly and in any event within five (5) calendar days of the occurrence (or after receiving notice of the occurrence) of the covid-19 event, giving, to the extent reasonably practicable, the details and expected duration of the covid-19 event and the effects, or reasonably anticipated effects, on its ability to perform (the "covid-19 notice"). Delay or failure to comply with the notice provisions in this clause shall not deprive the covid-19 affected party of the right to claim relief but shall expose the covid-19 affected party to liability in damages to the other party for loss suffered by the other party which could have been avoided by prompt notice. The covid-19 affected party shall use commercially reasonable efforts to overcome the effects of the covid-19 event.

22.2. Provided that a covid-19 notice has been given and the covid-19 affected party has used and is continuing to use commercially reasonable efforts to overcome the effects of the covid-19 event, for as long as the covid-19 event and/or its effects exists and to the extent that performance is prevented, hindered or delayed by the covid-19 event and/or its effects, the covid-19 affected party shall not be liable to the other party and the covid-19 affected party may suspend performance of its obligations under the Contract (a "covid-19 suspension"). The covid-19 affected party shall promptly notify the other party when the covid-19 event and/or its effects have ceased or been overcome.

22.3. If the period of the covid-19 suspension is equal to or exceeds 30 days from the date of the covid-19 notice, and so long as the covid-19 event is continuing, either party may, in its sole discretion and by written notice, (a) if the contract is for a single delivery, terminate this contract or (b) if the contract is for multiple deliveries, terminate the deliveries affected by the covid-19 event. Upon termination in accordance with this clause, neither party shall have any further liability to the other party in respect of this contract or, as the case may be, the terminated deliveries except for any rights and remedies previously accrued under the Contract including any payment or repayment obligations.

22.4. Where there is any curtailment, reduction in, interference with, failure or cessation of supply to Seller by seller's intended supplier or supplier's source of supply which appears to be or is alleged to be due to a covid-19 event, or any refusal to supply by these persons (whether lawful or otherwise) is alleged to be due to a covid-19 event, the Seller shall not be obliged to supply the Buyer from alternative sources to make good shortages or deficiency of delivery resulting from the effects of the covid-19 event.

22.5. A covid-19 event includes (but is not limited to) the following:

a) Closing of, or restrictions upon the use of mooring facilities, docks, ports, harbours, railroads or other navigational or transportation mechanisms;

b) Shortages of or restrictions on labour or workforce;

c) Detention of the Product and/or the Vessel and/or the supplying barge and/or other supplying facility;

d) Any act of any governmental authority; and

e) Good faith compliance with any law, regulation, order, request or directive of any supranational, international, national, port, transportation, local or other authority or agency.

22.6. A party's failure to perform its obligations under this Contract due to economic or financial considerations shall not constitute a covid-19 event